POUND *et al. v.* MOORE.

No. 6734.   September 27, 1929.

*D. F. Black* and *George F. Fielding,* for plaintiffs in error.

*I. L. Oakes* and *O. A. Nix,* contra.

HINES, J.   Wyatt S. Moore filed his petition against A. V. Kimsey, F. Q. Sammon as administrator of the estate of Mrs. Mary J. Pittman, deceased, Sadina R. Bradford, Emma G. Morrison, and Savilla O. Pound, and made the following allegations:   John King died on February 12, 1896.   By the first item of his will he devised to his wife, Nancy E. King, for and during her natural life only, his home place containing 480 acres, more or less.   She was to have exclusive control and use of the personal estate, with the right to sell or otherwise dispose of the same as she might desire or see proper.   She was to have the same power over and rights to the rents, issues, and profits of the home place, but was not permitted to sell or dispose of it in any way to the injury of his five daughters then living with them, his object being to provide a home for his wife during her life.   By the second item he devised said home place to his five single daughters, Mary J., Rachael E., Emma G., Sadina E., and Savilla O. King, then living with him, share and share alike, upon the death of his wife, and, after his wife's life-estate therein should cease by her death, to be theirs and belong to them exclusively after the death of his wife, none of his other children to have any part, interest, or title therein.   By item three he provided that in the event either of his said daughters married, her interest in the said property should in no wise be used or become liable for any debt, contract, or liabilities of her husband, and that in the event of the marriage of any one or more of his daughters, and of such daughter dying leaving no children or representatives of children, then the interest of such a one should not vest in or belong to her husband, nor vest in or belong to all his children alike, but should revert and belong to and be the property of his "said five daughters or their representatives who may be then in life.   That is, in case of death of one of said daughters after marriage, her share in said 480 acres of land goes to and vests in her surviving sisters above named or their representatives, if their parents are dead, unless said deceased wife should leave a child or children, in which case the mother's share shall vest in and belong to said child or children exclusively, and in this case the surviving

husband having no interest therein. After my said wife's death, if all of said daughters, by reason of marriage or otherwise, should among themselves agree to divide said farm of 480 acres among themselves privately, they have the right to do so."

The wife of the testator died before he died. The five daughters married. Rachael E. King married the petitioner. All were living at the death of the testator. After the probate of his will, the five daughters divided said land among themselves, as therein permitted. The home place was surveyed and divided into five tracts on May 6, 1896, and the daughters by warranty deeds conveyed to each other these several tracts. Each of said deeds contained this provision: "This deed conveying all of the interest of the party of the first part and title in or right to said property to the party of the second part—which she may have been entitled to as distributee or legatee under the will of John King, deceased, or as the heirs at law of his estate or otherwise." Each of the five daughters went into possession of the tract coming to her under the will and division and the deeds made between the daughters as aforesaid. The petition describes the tract of land which went to the wife of petitioner. She died in May, 1925, leaving no child or representative of a child, and leaving petitioner as her sole heir at law. Mary K. Pittman, one of said daughters, died on May 13, 1927, leaving no child or representative of a child, her husband having died before she died, and F. Q. Sammon is the administrator of her estate. After the death of petitioner's wife the defendants, Emma G. Morrison, Sadina R. Bradford, and Savilla O. Pound, three of said daughters, took possession through their tenant, Kimsey, of the tract of land so conveyed by the daughters to his wife, and are in possession thereof, claiming that, as his wife left no child or representative of a child, said tract of land reverted to them and became their property. Petitioner contends, that, under the will and under the deeds made by the five daughters, the title to each of said five tracts of land in the division vested in fee simple in each of said daughters; that under the rule requiring estates to vest as early as possible, and under a proper construction of said will, it means that if any of said daughters should die before the life-tenant, leaving no child or representative of a child, the interest of such a one should go to the survivors; that as all of said daughters survived the testator and the life-tenant, the interest

and title of each became absolutely vested in fee simple; and that under the deeds made between said five daughters, conveying to each other all their interest in the several tracts as distributees or legatees under said will, or as heirs at law of the testator, or otherwise, the same conveyed any reversionary interest which they might have and made a perfect fee-simple title. Petitioner is the owner of the tract of land conveyed to his wife in the division of the home place. There was no administration on the wife's estate, all debts have been paid, and as her sole heir at law he is entitled to recover that land. He prayed accordingly.

The defendants demurred to the petition, upon the grounds that it set forth no cause of action, and that it showed that petitioner had no claim, right, title, or interest in the land. The case was submitted by agreement of the parties to the judge without a jury. It was agreed that there was no dispute as to the facts, all the allegations of the petition being admitted, except the conclusions of law; and that the case depended upon the construction of the will and on the legal effect of the deeds made between the five daughters in the division of the home place. The judge overruled the demurrer, and rendered judgment in favor of the plaintiff. The defendants excepted.

■ The devise in item 1 of the will of certain land to the testator's wife for life, and the devise in item 2 of the same land to five named daughters, who were then single and living with the testator, share and share alike, upon the death of the wife and after her life-estate in the land had terminated, to be the property of the daughters exclusively at the death of the wife, and the provision in item 3 that in the event of the marriage of a daughter and of her death without child or children or representative of child or children, then the interest of such daughter should revert and be the property of the surviving daughters, and the further provision that if a daughter died leaving a child or children, then her share should vest in and belong to said child or children exclusively, conveyed to the daughters estates for life in the land so devised, with remainders to their children, and, in case a daughter died without child or children, remainders over by way of executory devises to the surviving named daughters of the testator. *Brown* v. *Lane,* 147 *Ga.* 1 (92 S. E. 517); *Barton* v. *Chance,* 147 *Ga.* 522 (94 S. E. 1007). *Patterson* v. *Patterson,* 147 *Ga.* 44 (92 S.

E. 882), is distinguishable upon its facts. *Nottingham* v. *Mc-Kelvey,* 149 *Ga.* 463 (100 S. E. 371).

■ Upon the death of Rachael E. Moore, one of the five named daughters of the testator, without children, her share in this land would have passed to her surviving sisters but for the division of this land between the daughters and the conveyances made by them to each other, to which reference will now be made. In May, 1896, the daughters had this land surveyed and divided into five parts, and made warranty deeds to each other to these parcels. Each of these deeds contained this provision: "This deed conveying all of the interest of the party of the first part and title in or right to said property to the party of the second part—which she may have been entitled to as distributee or legatee under the will of John King, deceased, or as the heirs at law of his estate or otherwise." By this provision each sister conveyed to the others all her interest, title, or right in the parcels so conveyed, to which she would have been entitled as distributee or legatee under the will of the testator, or as his heir at law or otherwise. These deeds conveyed the contingent interest of the surviving sisters which they would take under the will in case of a sister dying without child or children. Under the warranty deed from her sisters, Rachael E. Moore acquired all of their right, title, and interest in and to the tract of land which fell to her under the devision made by the sisters; and such right, title, and interest passed to her husband as her sole heir at law. Inhibition in the will against the husband having any interest in the land devised in no way affects his right as an heir at law of the wife.

The petition set out a cause of action, and the court did not err in overruling the demurrer, and in awarding to petitioner the premises in dispute.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Hill J., who dissent.*

BECK, P. J., concurs in the result.

HILL, J. (with whom concurs Russell, C. J.), dissenting. This case involves a construction of the will of John King, executed on October 17, 1893, as follows:

"Item 1. I give, bequeath, and devise to my wife Nancy E. King, for and during her natural life only, my entire home place situate, lying, and being in Patterson's survey, in Hog Mountain

district, said county and State, embracing and including (480) four hundred and eighty acres, more or less; also give bequeath and devise unto her all of the personal property of which I may be possessed at the time of my death, including money, notes and accounts, stock, cattle, household and kitchen furniture, wagons, and all and every other article of personalty that may at my death be owned by me, she my said wife to so use and occupy the said personalty as will best subserve her own desires, needs, and purposes, she to have exclusive control over the same, with the power and right to sell or otherwise dispose of the same as she may desire or see proper. She is to have the same power over and rights with the rents, issues, and profits of said 480 acres of land, but is not permitted to sell or dispose of said land in any way to the injury of the five daughters now living with us and hereinafter provided for, the object being to provide a home for my said wife during her natural life and the land to vest at her death as hereinafter directed.

"Item 2. I give, bequeath, and devise unto my five daughters now single and living with me, to wit, Mary J. King, Rachael E. King, Emma G. King, Sidina E. King, and Savilla O. King, share and share alike, upon the death of my said wife, and after my said wife's life-estate therein shall by her death cease and terminate, the above-described 480 acres of land, which is in item 1 sufficiently described, to be theirs and belong to them after the death of my said wife exclusively, no one or other of my said children to have any part or parcel or any interest or title therein and thereto whatever, and whatever of said personalty is left after my wife's death is to be the exclusive right and property of these five girls as aforesaid.

"Item. 3. I desire and it is my will that in the event of either of my said daughters named in item 2 marrying, that her interest in said property shall in no wise be used or become liable for any debt, contract, or liabilities of her said husband. I desire and will further that in the event of such a marriage of one of my said daughters or others of them, and her death leaving no children or representatives of children, then the interest of such an one shall not vest in, go or belong to her said husband, nor vest in, go or belong to all the children alike, but is to revert and belong to and be the property of the said five daughters or their representatives who

may be then in life. That is, in case of death of one of said daughters after marriage, her share in said 480 acres of land goes to and vests in her surviving sisters above named, or their representatives if their parents are dead, unless said deceased wife should leave a child or children, in which case the mother's share shall vest in and belong to said child or children exclusively, and in this case the surviving husband having no interest therein. After my said wife's death, if all of said daughters by reason of marriage or otherwise should among themselves agree to divide said farm of 480 acres among themselves privately, they have the right to do so."

Items 4, 5, and 6 relate to bequests of other property to other children, and need not be here set out.

"Item 7. As I have willed, given, and bequeathed all of the personal property remaining at the death of my wife to my five children hereinafter described, being the girls now living with me, I desire, in case of the death of either one of them, that the interest of such deceased one shall vest in the remaining ones as directed in reference to the share of the real estate as outlined in item 3, these girls having the right to use and dispose of said remaining personalty as they may mutually agree, no part thereof to belong to or be shared in by any of the other of my children as directed in item 2."

The other material facts and contentions appear in the opinion of the majority of this court. The defendant in error relies upon *Patterson* v. *Patterson,* 147 *Ga.* 44 (supra), as being controlling in this case. In the *Patterson* case it was stated and held as follows: "The second item of the will of Drewry S. Patterson provided as follows: 'I will that my wife, Margaret Patterson, reside on and have a lifetime interest in my homestead; . . and at her death I wish the homestead on which I now live to be the property of my daughter, Mary Jane Patterson. If the said Mary Jane Patterson should die without child or children, then the property or the proceeds of the same to be the property of my son, David W. Patterson, or, in case of his death, the property of his children.' Margaret Patterson, the person designated as life-tenant, survived the testator; and Mary Jane Patterson survived the life-tenant, but did not marry, and died childless, leaving a will disposing of the property referred to in this item of the will. This property was claimed by one deriving title from David W. Patter-

son and his children. *Held,* that, under the provisions of the item of the will above set forth, Mary Jane Patterson, having survived the life-tenant, took an absolute estate in fee simple; and the court erred in sustaining the contention of the claimant." Standing alone, the *Patterson* case might be controlling of the question here involved; but applying the familiar rule that the intention of the testator is the cardinal rule of construction, we are of the opinion that the *Patterson* case is not controlling here. What was the intention of the testator in the instant case? It is evident from the will and the various expressions contained therein, construing it altogether, that the testator wanted to provide for his daughters, and to give them, and them alone, the 480 acres of land after the death of his wife, the life-tenant, and he expressly declared that the interest of the daughters should not be subject to the debts or contracts of any husband they might have. In addition to that, the will further provided that in case of the marriage of either or all of his five daughters, and they died without leaving children or representatives of children, the share of such daughter should go to the surviving sisters, and that the property should be theirs. In this state of the record, the Chief Justice and the writer are of the opinion that it is clear as to what the intention of the testator was with reference to the land devised to his daughters.

The defendant in error relies also upon the deeds executed by the sisters to the wife of the husband in the present case, but such deed could convey no greater interest than the sisters had and all the title and interest they had was derived from the will of testator, and, therefore, the deed would not be controlling of the interest which the deceased sister had in the land, but the interest she had at the time of her death was derived from the will, and the deed conveying the interest to the deceased sister was in compliance with the authority given by the testator in the will to the daughters that they might divide the property in kind. The purpose of executing the deeds evidently was to partition the land under the authority conferred by the will itself, and the sisters adopted this method of partitioning the land, inasmuch as they were tenants in common under the will, with authority to divide it share and share alike. So the Chief Justice and the writer are of the opinion that the will devised to the five daughters the 480 acres of land with the

privilege of dividing it in kind, and that if either of the daughters should die without leaving a child or children, or representatives of children, the deceased daughter's share should go to the surviving daughters.

In item 3 of the will it is expressly provided, that, "in the event of such a marriage of one of my said daughters or others of them, and her death leaving no children or representatives of children, then the interest of such an one shall not vest in, go or belong to her said husband, nor vest in, go or belong to all the children alike, but is to revert and belong to and be the property of the said five daughters or their representatives who may be then in life," etc. Here is a clear intention of the testator to exclude the daughter's husband from any participation in the property devised.